May it please the Court, I am Robert Wells, representing the Petitioner. I would first submit that the evidence strongly, clearly, without contradiction, establishes the Petitioner's validity within the jurisdiction of this Court. And further, finding that Judge Ho's lack of credibility findings, which relate not only to the Petitioner, but also to 16 witnesses who were presented to the Petitioner, testifying to the validity of a marriage, is not supported by any of the evidence. The – I'm mindful that the Court indicates that briefs have been written or read, excuse me, and that we shouldn't elaborate on the – on the – what's stated therein. But, you know, briefly, with respect to the asylum, the – there's abundant evidence proving that the Petitioner was subject to persecution in the past. And based upon this Court's decision in Navis, the presumption is that there will be future persecution unless that is somehow rebutted by the government. No – no rebuttal offered here. And there's also affirmative evidence presented by the Petitioner indicating that conditions in the – in Russia are even more persecutorial with respect to persons who are Jews. Counsel, what about the testimony of the witness White about the offering of money for – to find someone to marry? Well, what I would say there, Your Honor, is I cross-examined Mr. White, who was definitely adversarial. He was in a position of being a lawyer himself, saying this question is not relevant. He's a buddy of Mr. Katavis. I would submit that Judge Ho took the position very early that she prejudged the case. I spent a considerable amount of time in the opening brief presenting. I can read that very well. And, Your Honor, there was no response in the government's answering brief except a reference to the fact that Mr. Wood, who was after talking to him. And he – he signed the declaration, but only after scratching out, I know that they were married, saying, I can't say that they were married, but I certainly can say that they were cohabitating. The – there were – Judge Ho may have Counsel, maybe it would be easier if we tried to keep the asylum and the marriage claims separate. And you were starting on the asylum claim. Well, I would like to do that, Your Honor, but the judge's decision with respect to lack of credibility affects her whole disposition of the The – if the court wants – Well, I thought you were trying to address the asylum claim initially. I would point to the death of the Berenstain family, the murder of the mother and father of Yulia Berenstain, who testified in this case both by declaration and by oral testimony, taken, I believe, by telephone. And Ms. Berenstain, who was admitted into the United States as a The – the testimony is graphic with respect to the telephone call to the petitioner after the same night that – or the day after that the Berenstains, the elder Berenstains, were murdered, saying that this is what happens to persons like yourself. A number of instances reported a very severe physical encounters with the petitioner with persons who were attacking her or putting graffiti on the apartment, knocking on the door, making uncouth, profane comments. Or you would have to say that regardless of her credibility, there is enough evidence that requires a finding of asylum. Well, Your Honor, I would state first that there's no evidence supporting the finding of lack of credibility of the petitioner on either subject. And – but there is – it's – in addition, it is – her testimony is independently corroborated by Ms. Berenstain, who – whose testimony has not been That is clear. I – they've – there's strong testimony in favor – supporting the fact that this young lady, as most Jews in Russia, were subject to persecution by elements in society that the government, frankly, actively encouraged. Well, let me ask the question in a slightly different way. If we discount her testimony entirely, do you think you still have a chance of prevailing on the asylum claim? Your Honor, yes, I do. And tell me why. Ms. Berenstain. And her closeness to the family, no lack of credibility findings with respect to her. She testified straightforwardly with respect to the past persecution and the likelihood of future persecution, basically stating that it would be physically dangerous for the petitioner to return to Russia. That's – that in itself is strong testimony. You had about a minute left. Do you want to say that? I'll – I'll send – I'll say that much, Your Honor. Good morning, Your Honors. My name is Jeffrey Berenstain. I represent the government in this case. And as the court and the counsel have discussed, there are two issues in the case, marriage fraud and asylum. Taking the marriage fraud first, substantial evidence supports the immigration judge's determination. We're talking about the cancellation of the permanent or – of her resident status. Well, what we're talking about – I mean, certainly the cancellation of resident status occurred, but we're talking about a removal – a deportation proceeding brought on the basis that the petitioner engaged in marriage fraud in obtaining an immigration benefit, which would be a visa for admission of a spouse of a United States citizen. And the test is whether or not the petitioner has provided evidence which compels a conclusion that clear and convincing evidence did not support marriage fraud. Where do you find that it's clear and convincing as opposed to a preponderance of the evidence? It's substantial evidence. The evidence must compel a conclusion that the immigration judge did not have clear evidence. Before the immigration judge? Yes. Where do you find that? That's in your decision in Nakamoto v. Ashcroft. It's 363, if I can – You're not talking about what it takes to reverse a decision by the BIA or the immigration judge. Yes, I am. That's your standard of review, Your Honor. That's not what I'm asking you about. I said what standard is there before the BIA or the immigration judge? You said the immigrant has to prove by clear and convincing evidence. No, Your Honor. No, she doesn't. The service has to – obviously, the BIA has to know about review of the immigration judge. All right. The BIA – Let's go down to the immigration judge. Yes. The immigration judge has – here's a case where the issue is whether it's a sham marriage. What is the standard by which the immigration judge decides that case? The immigration judge must decide that there's clear and convincing evidence supporting the finding of removability, of deportability in this case. And your standard of review – No, I didn't ask you about our standard of review. I answered your question, Your Honor. And all I'm asking you about is the standard before the immigration judge. I've answered your question. All right. So that the immigration judge you're saying has to find in this case by clear and convincing evidence that it was a sham? That's correct, Your Honor. And you can only reverse that. Okay. You find that the evidence – So that when the immigration judge reached his conclusion and said the respondent has not met her heavy burden of proving that she did not enter into this marriage solely for the purpose of obtaining immigration benefits, he was applying the wrong standard? No, Your Honor. The immigration judge didn't apply the wrong standard. He did say – I thought it was the government's burden to prove – Your Honor, he did say what you read. Yes. But that was in connection with another issue that the immigration judge might have thought was part of the case. It didn't seem to be part of the case. But the immigration – It's a clear sentence of his conclusion. I understand. That he's talking about an irrelevant issue? It seems that he – that she was, yes. I can tell you that at page – pages 298 of the record, 303 of the record, and 305 of the record, the IJ concluded that the evidence establishes a fraudulent marriage, marriage fraud. And there is not evidence compelling a conclusion that there's not clear and convincing evidence of the marriage fraud. That evidence is the testimony of three people who were testifying against their penal interests. That is the individual that the petitioner married. Now, did the IJ also not know what she was saying when she said in the – when she finally gets on page 146, she's starting to analyze the case and says – analysis of case and says, although the evidence is not clear as to whether this was a fraudulent marriage. Did she know what she was saying when she said that? Well, I think she – that statement is rather inartful. She says – Well, here's the problem. Here's the problem. If we don't know if the immigration judge applied the right standard, it doesn't make any difference what we think about that case. We have to remand it at minimum to say, you've got to apply the right standards. So what's the best – where in this opinion – As I indicated – That says – makes the – makes the finding that you would like to have drafted, that you'd like to be defending today. Does she use the word clear and convincing anywhere? She doesn't use the word clear and convincing. How do we – how do we know that she analyzed under the right standard? Because she ruled that the marriage was entered into fraudulently, and she cites the clear and convincing evidence. She says that on page 298. She says that on page 303. Wait a minute, wait a minute. 298, where are you? Yeah. I'm right here with you. Where does it say clear and convincing? It doesn't – Your Honor, I've already told you that she doesn't say clear and convincing evidence. But she did rule that the marriage was fraudulently entered into, and she cites the evidence. And the evidence is – and she discusses all of the evidence. And she rules that there was – the evidence establishes marriage fraud. If that's not clear and convincing evidence, I don't know what is. No, but what you're asking us to do is what you say we can't do is to go into the mind of the I.J. and determine what the evidence was in the first instance. What we review is findings. And I just can't tell from – I mean, I may say – I may agree with you 100%. I may say, look, it's – this looks like clear and convincing to me. But all we review – and you guys – you come up here and you say, look, your review is limited. And if there is – if the immigration judge finds X, Y, and Z, your review is very limited. But if the immigration judge does find X, Y, and Z, don't we just have to send it back down? Well, I have two responses to that. Number one is there's no case that holds that the immigration judge or fact finder has to use magic words. The rule generally is that if the path of the adjudicator can be ascertained from the meats and bounds of the decision, then you've got something to review. And in this case, I'm not going to tell you that this decision doesn't jump around and isn't confusing it many times. But the path – her path was clear. She concluded that the marriage was fraudulently entered into. She considered all the evidence. I don't know – I mean, obviously, she could have used the words clear and convincing. But absent that, I don't know what else she could have done. Well, it's not only that she didn't use clear and convincing. It's what I said. She started her conclusion. She said there was a heavy burden on the petition. And then she went into the evidence and made conclusions that there was a fraudulent marriage. I mean, it's fairly clear to me. Aren't you asking us to make a de novo review of that? I mean, at the end of the day, you're asking us to make a de novo review of the record and conclude that she applied. She starts off by saying, I'm putting the burden on the wrong party, and here are my conclusions of law. You're really asking us to say, well, forget all that. You look at the record de novo and make your own determination. And I don't think that's what the service really wants us to do. I'm certainly not asking you to do that, Your Honor, and I'm representing the service. So I don't think the service wants you to do that because I don't want you to do that. Well, don't we have to imply from her decision that she used the right standard, don't we? That's what you're asking us to do. Well, you know, the Supreme Court just told us again recently that when the agency uses the wrong standard, don't try to straighten it out. They should send it back. Have them apply the right standard. When you have to find facts, you have to send it back. It cuts different ways in different cases. And I'm quarreling with you, what you're saying. I understand your argument. I'm just saying, look, in this case, it's impossible to tell from me whether or not she got the standard right, and it looks like she got it wrong. Now, did the evidence compel a different conclusion? You know, if I were sitting in her shoes, I might well have done that. But is that our province to say let's weigh the evidence up here? No, Your Honor. I'm not suggesting that you should weigh the evidence. I am suggesting, number one, that her path is clear, and I am also suggesting that she made sufficient findings. You don't have to make any findings of fact. All you have to do is take a look at her findings of fact, apply the law, and you affirm. Okay. Let me give you an example in a different context. I don't mean to interrupt you, but our time is short. Let's say that in a criminal case, the jury is instructed that the defendant had to prove innocence beyond a reasonable doubt, and then made the necessary findings that we could say, no, well, it doesn't matter that they were instructed that. The findings are there, and the defendant, in fact, I think we can determine that the defendant was, in fact, guilty beyond a reasonable doubt. I mean, that wouldn't be countenance. Why is this different? Well, I think it is different because, again, we're not asking you to find any facts. We're not asking you to assume the function of the jury or the immigration judge, the jury in your construct, immigration judge here. The standard, your standard of review is to determine whether or not there's evidence compelling an opposite conclusion. You can look at the evidence to determine whether or not you think there's any evidence that might compel a different conclusion. But if you don't, and I don't think you can here, given the statements of, you know, against penal interest by all the individuals relied upon by the government, don't think you can. There's certainly clear and convincing evidence. Again, it's difficult in many places to ascertain what the immigration judge is doing, but I certainly can read what she did and what she intended, and I think this Court can as well. I see that I'm out of time and I haven't discussed the asylum component. We'll have to struggle along with the asylum. Unfortunately, we really have to stick to the limits today. We did start early. Let me just say one sentence, and it's my sum-up sentence, that the asylum determination, that there's no evidence compelling the conclusion that there was any past persecution, or that Ms. Savitskaya, however one pronounces your name, and I apologize for that, had a well-founded fear of persecution. Take a look at Korablina, where the evidence was much worse for Ms. Korablina. You're saying even if the credibility finding were reversed and you accepted all of her evidence as true, it would be? I think that's what the ---- Your Honor, and I think that the credibility determination is okay as well. And I apologize for running over. Oh, no. You're full. Thank you. It's my fault. Thanks very much. Just briefly, because that's what I have, the immigration judge did not discuss all the evidence. As additional proof of her prejudging of the case, made no reference to testimony of two reputable attorneys, Whitney Ruprecht and Kathleen Weber, both of whom testified that they asked Mr. Katavis a number of times to make certain that his testimony, with respect to the validity of their marriage, was true. Mr. Katavis is the only person who appeared in this whole long record who is known to be a liar. He had to lie at one point or another. Either he's lying when he went before the immigration judge this time or he's lying when he went before the immigration examiners on a couple of occasions when he lied to Mr. Ruprecht. I'd like to refer to briefly ---- Very briefly, because you have two seconds. His cross-examination. I will make this quick. Whitney Ruprecht. Again, respected, reputable attorney. And I ask him, Mr. Ruprecht said that you told him that you married because you were deeply in love but that you drifted apart. Are you denying that you said that to him? I do not recall it. He doesn't say I'm denying it. I do not recall it. You never told Mr. Ruprecht about marriage for money. I never said anything about that. This, the Petitioner did not receive a fair trial. Thank you, counsel. Case just arguably submitted. The final case of the morning is Wang Min v. Ashcroft.
judges: D Nelson, Reinhardt, Thomas